OPINION
On June 15, 2000, appellee, the Tuscarawas County Department of Job 
Family Services, filed a complaint alleging Rick Meek, Jr. born March 20, 1990, Cody Meek born February 18, 1991, and Jessie Meek born July 30, 1992 were neglected children. Mother of the children is appellant, Debra Sickels; father is Rick Meek. This was not the first time appellee had filed a complaint against these parents. Appellee has been involved with this family since 1998.
A hearing was held on June 15, 2000. By judgment entry filed June 16, 2000, the trial court placed the children in appellee's temporary custody and issued a no contact order, barring Mr. Meek from visiting the children and/or appellant based upon past domestic violence incidents.
A case plan was filed on June 21, 2000. An adjudicatory hearing was held on June 29, 2000 wherein both parents admitted to the complaint. By judgment entry filed June 30, 2000, the trial court found the children to be neglected and continued its previous orders i.e, temporary custody and no contact order.
A dispositional hearing was held on July 5, 2000. By judgment entry filed July 7, 2000, the trial court continued the temporary custody with appellee and rescinded the no contact order as between appellant and Mr. Meek only.
On December 15, 2000, appellee filed a motion for permanent custody based upon appellant's failure to progress under the case plan. Hearings were held on April 12, 2001 and May 16, 2001. By judgment entry filed July 18, 2001, the trial court awarded permanent custody of the children to appellee.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE COURT DID NOT, BY CLEAR AND CONVINCING EVIDENCE, DETERMINE THAT THE STATUTORY ELEMENTS ON R.C. 2151.414(B)(1) WERE MET: ITS FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II TUSCARAWAS COUNTY JOB FAMILY SERVICES FAILED TO MAKE DILIGENT EFFORTS TO REUNITE MOTHER AND SONS, AS REQUIRED BY R.C. 2151.41.9. TCJFS ALSO FAILED TO SPECIFY WHAT NEGLECT APPELLANT WAS ACCUSED OF, OR TO DIFFERENTIATE BETWEEN THE PARENTS IN ITS PLAN.
 III THE GUARDIAN AD LITEM FAILED TO CONSIDER THE BENEFITS TO THE CHILDREN IN RECONCILING WITH THEIR MOTHER, OR THE CHILDREN'S WISHES, IN HER REPORT TO THE TRIAL COURT.
 IV THE COURT WAS MISLED AS TO THE DURATION OF THE BOYS' TIME IN THE CUSTODY OF TUSCARAWAS COUNTY JOB AND FAMILY SERVICES (TCJFS).
 V APPELLANT MAY NOT HAVE RECEIVED PROPER NOTICE FROM TCJFS OF ALL MATTERS IN HER CASE AND THEREFORE MAY NOT HAVE BEEN PROPERLY ABLE TO ADVANCE HER CASE.
 I, II
These assignments of error challenge the trial court's determination that the evidence supports the award of permanent custody to appellee and that appellee made every effort to reunite the family. Appellant claims the evidence does not support the award of permanent custody to appellee and appellee did not make diligent efforts to reunite the family. We disagree.
As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Any other factor the court considers relevant.
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
The children were initially removed from the home because of domestic violence and alcohol abuse. T. at 122-123. The case plan called for reunification, and included domestic violence and alcohol assessment for the parents and counseling for the parents and children. T. at 126-128. It also included the need for stable housing. T. at 133. There is no evidence to establish that Mr. Meek completed any parts of the case plan. T. at 135. In fact, Mr. Meek had no contact with appellee since November of 2000. T. at 134.
The focus of the case plan as to appellant was for counseling and assessment. T. at 128. The counseling was two part, the first to recognize that she had some culpability in permitting the abuse and the second to work on her parenting skills. T. at 8-9, 13. The parenting skills were never addressed in counseling because appellant never assumed any responsibility for the abuse. T. at 9, 14, 17-18. Annette Gamble, the children's foster mother, took appellant under her wing and attempted to help her parenting skills. T. at 80-81.
It appears from the evidence that appellant drifted in the case plan from 1999 to 2001. During this time, she had seven or eight different residences, always with other people. T. at 63, 139. She had five or six different jobs, the longest being four months. T. at 66, 139. She went back to living with the abuser, Mr. Meek, and violated a no contact order between the children and Mr. Meek by taking them with her on a jail visit. T. at 109-110, 230. It was not until she terminated her relationship with Mr. Meek and the motion for permanent custody was filed that she began counseling in earnest. T. at 8-9, 16. Her progress is not clear and her counselor, Natalie Fox, could not give an opinion on it. T. at 27-28. There were still many more improvements needed. T. at 27-30. Both Ms. Fox and Beth Bertini, appellee's caseworker assigned to the case, believe it is much too early in the apparent change by appellant to be confident of her parenting skills and the stable environment. T. at 30; 143-146.
As appellant's own witnesses pointed out, the turn around for appellant came after she severed her relationship with Mr. Meek and moved in with Otis Mathias, a boyfriend and long time family friend. T. at 186, 192, 194, 201-202. As appellant stated, she is now happy. 218-219, 230. Ms. Bertini and Mrs. Gamble doubt the long term outcome of this relationship and that appellant has severed herself from Mr. Meek. T. at 91, 142-144. As Ms. Bertini stated, historically appellant is stable for four or five months and then she regresses. T. at 144.
Appellant argues she is entitled to the custody of her children based upon her two month relationship with Mr. Mathias. Prior to this relationship, appellant admitted permanent custody with appellee was the best placement for the children. T. at 223. Appellant now sees placement with her as best for her, causing her less stress and more happiness. T. at 25-26. Since appellant has established this new relationship, the children have regressed and are stressed by the changes in their mother. T. at 81-84. The children see that appellant is getting on with her life and are stressed and worried about change. T. at 72-74.
Appellant wanted the trial court to balance two months of stability versus two years on a roller coaster. The trial court specifically rejected this argument, finding appellant's progress to be "too little, too late." We cannot find that the trial court erred in this judgment. All of the facts relied upon in the judgment entry were established by overwhelming evidence in the record. We can understand the trial court's frustration in balancing appellant's parental rights against the long term best interests of the children and their need to get on with their lives.
The record is replete with appellee's efforts to reunite this family. In particular, the foster mother, Mrs. Gamble, became a surrogate mother to appellant and advised and helped her in her parenting skills. T. at 80-81. Counseling was available, but not used by appellant until after the permanent custody motion was filed. T. at 8-9, 16. After two years in placement, appellant did nothing to help herself until two months before the April 2001 hearing. As the guardian ad litem report indicates, appellant was involved with appellee since 1988 and even to this date, has not met the case plan and directives.
We find substantial credible evidence in the record to substantiate that appellee has made diligent efforts to reunite this family, and the best interests of the children are best served with permanent custody to appellee.
Assignments of Error I and II are denied.
 III
Appellant claims the report of the guardian ad litem failed to consider the benefits to the children as a result of reconciliation with their mother. We disagree this is error.
The report of the guardian ad litem is of help and assistance to the trial court, but is not determinative of the issues. A trial court's duty is to determine the best interest of the children after a review of all the evidence presented, including a guardian ad litem's report. As we have addressed supra, we find the weight of the evidence substantiates the trial court's conclusions apart from the guardian ad litem's report.
Assignment of Error III is denied.
 IV
Appellant claims the trial court was misled as to the amount of time the children were in appellee's custody. We disagree.
Appellant argues the report of a semi-annual review mistakenly designated the date the children were placed in custody. We find the trial court was given ample direct evidence by Mrs. Gamble and Ms. Bertini as to the amount of time appellee had the children. T. at 41-42, 122. Further, the trial court's judgment entry and findings did not rely on the mistaken date.
Assignment of Error IV is denied.
 V
Appellant claims she did not receive proper notice and therefore was unable to properly advance her case. We disagree.
The record indicates a request for service of the June 15, 2000 permanent custody was made upon appellant on June 16, 2000. Appellant filed a request for discovery on June 20, 2000. The record and judgment entry of the trial court establish appellant and counsel were present at the hearings held June 15, 2000, June 29, 2000, July 5, 2000 and February 7, 2001. The transcripts of the evidentiary hearings on April 12, 2001 and May 16, 2001 establish appellant was present and represented, and testified and presented witnesses on her own behalf.
Upon review, we fail to find any error or lack of due process.
Assignment of Error V is denied.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is affirmed.
Hon. Julie A. Edwards, P.J. Hon. Sheila G. Farmer, J. Hon. John F. Boggins, J. concur.